Steven A. Zamsky, Esq.
ZAMSKY LAW FIRM
Suite 805, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam USA 96910
Telephone: (671) 477-3637
Facsimile : (671) 472-1584

Attorneys for Plaintiffs Ronald P. Marangi and Erma K. Marangi

FILED
DISTRICT COURT OF GUAM
JAN 22 2004
MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| RONALD P. MARANGI and ERMA K. MARANGI,<br><br>    Plaintiffs,<br><br>vs.<br><br>GOVERNMENT OF GUAM,<br><br>    Defendant. | CIVIL CASE NO. CIV03-00039<br><br>SUPPLEMENTAL MEMORANDUM; DECLARATION OF SERVICE |

**COMES NOW**, Plaintiffs Ronald P. Marangi and Erma K. Marangi (hereinafter "**Plaintiffs**") and files the following Supplemental Memorandum with respect to this Court's request of January 15, 2004.

<u>**NOT NECESSARY TO DECIDE GUAM'S AUTHORITY**</u>

As hereinafter set forth, the court need not reach a question of Guam's authority to levy outside of Guam.

ORIGINAL

IRC §6212 is the section which authorizes the issuances of the Notice of Deficiency, which in turn extends the time for the making of the assessment. That section says:

> §6212. Notice of deficiency.
>
> (a) **In general.** If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

The last sentence of that section provides that the Notice shall have contact information for the taxpayer advocate. The form used by the Department of Revenue and Taxation does not include such language. Indeed it cannot, because the Department of Revenue and Taxation does not even have such a person.

The time within which to make the assessment was to run on August 5, 2000. Since this Notice was ineffective, the period ran at that time. The assessment, of course, was not made until years later.

The assessment period having run on August 5, 2000 the extension signed by Mr. Robert Steffy on August 10, 2000 was ineffective, the time limit having already run.

Even if it is decided that for some reason the failure to comply with the requirements of the Internal Revenue Code is not fatal, the Notice of Levy dated December 19, 2001 is also ineffective and a nullity.

As vehemently argued by the Defendant, the requirement of the law is that the Notice of Deficiency be addressed to the taxpayer at the taxpayer's last known address. This Notice was addressed Plaintiffs in care of Mr. Steffy's office. Both Ms. Colleen Meno and Ms. Veronica Quan testified that no where in Defendant's files was there anything that indicates Plaintiffs' address to be in care of Mr. Steffy's office. It is clear from the terms of the Power of Attorney itself and regulations (which Defendant testified they were governed by) in all cases the notices are to be sent to the taxpayer and, if so directed in the Power of Attorney elsewhere as well. A copy of those regulations are attached hereto marked **Exhibit "A"**. Service on a taxpayer's accountant is not service on the taxpayer except when the specifics of the Notice of Deficiency are communicated to the taxpayer. There is no evidence in this case that such communication occurred.

The December 19, 2001 Notice is therefore a nullity and the time for assessing expired on December 31, 2001. The assessment of March 2002 is, therefore, time barred.

Even if Defendant is somehow held not to have been affected by the requirements of law, the Final Notice/Notice of Intent to Levy is also invalid. IRC §6330 and the regulations thereunder (which are attached hereto marked **Exhibit "B"**) expressly detail the information to be given to the taxpayer and the Collection Due Process Rights of a taxpayer. The enclosures sent with that Notice do not comply with law. What does comply is the Notice which is Plaintiffs' Exhibit 16. This is the IRS form. Exhibit 14 is also an IRS form, and used by the Defendant. Both were revised early in the year 2000. Defendant does not even have such a Collection Due Process hearing procedure.

Defendant has an obligation to ascertain a taxpayer's address when it knows the old address is no good. This Final Notice was returned.

Mr. Kenneth Benavente testified that when the envelope came back from the post office that he took no steps to determine Plaintiffs' correct address. However, when he was unable to serve Merrill Lynch here, he undertook quite a bit of investigation to determine an address for Merrill Lynch. To find Plaintiffs' address, all he had to do is call Mr. Steffy. Granted that Mr. Benavente did not personally know of Mr. Steffy's involvement, because the Department's procedure is to not deliver him the examination file. However, as the Department the Defendant had such knowledge. Mr. Benavente could have gained such knowledge, also, by either looking at that file, or talking to either Ms. Meno or Ms. Quan. Both are simple steps.

## DEFENDANT HAS NO AUTHORITY TO LEVY OUTSIDE OF GUAM

Even if it is considered that Defendant could bring an action to collect taxes in another district court, that authorization is not what is involved here. This is an attempt to serve a Levy, and enforce it, outside of Guam. The Levy, of course, did not have the benefit of any judicial intervention but is solely an administrative action. Therefore, even if the provisions of the Organic Act are viewed to be valid and authorize an action for the collection of taxes in a district court of a different district, Defendant did not attempt to do so.

///

///

///

## OTHER TERRITORIES

Neither Puerto Rico nor the U.S. Virgin Islands have the provisions that Guam has in the Organic Act with respect to income taxes and the collection thereof. Neither Alaska nor Hawaii, when they were Territories, had such provisions. The undersigned has sent e-mails to the University libraries in each of Hawaii and Alaska and has yet to receive a meaningful response from either of them. However, Title 48 USC in the Guam Territorial Law Library, does contain summaries of the provisions of the former Organic Acts of each of those two states. The provisions were, of course, repealed when each of the former Territories were admitted to the Union, however, the summaries are still there. Neither of them make any reference to income tax or, of course, any collection activities thereunder.

The Hawaii Organic Act can be found in Volume I of the Hawaiian Revised Statutes. It was a distinct IRS Distract (§87) and could adopt its own income tax. (See notes to §55 in the 1983 replacement). There is no provision for the application of the Internal Revenue Code as Hawaii's income tax.

///

///

///

///

///

///

## CONCLUSION

Defendant's Notices did not comply with the requirements of the Internal Revenue Code and did not advise Plaintiffs of important procedures which should be available to them, but the Defendant did not even have such procedures. Defendant's attempt to enforce a Levy outside of Guam is not authorized anywhere. Under these circumstances a preliminary injunction is called for and should issue, thereby freeing up Plaintiffs' property.

Respectfully submitted this 22 day of **January 2004**.

**ZAMSKY LAW FIRM**
**Attorneys for Plaintiffs**
Ronald P. Marangi and Erma K. Marangi

By: _____
       STEVEN A. ZAMSKY

## DECLARATION OF SERVICE

I, Steven A. Zamsky, hereby declare under penalty of perjury of the laws of the United States, that on the __22__ day of **January 2004**, I caused to be served by hand delivery a true and correct copy of the foregoing **Supplemental Memorandum; Declaration of Service** upon **Eric A. Heisel, Assistant Attorney General, Litigation Division, Office of the Attorney General of Guam**, Suite 2-200E, Guam Judicial Center, 120 West O'Brien Drive, Hagåtña, Guam USA 96910, **Attorneys for Defendant Government of Guam**.

Dated this __22__ day of **January 2004**.

_____
STEVEN A. ZAMSKY

Z8(0496.00)\PLD\P#2119

must be signed by the representative and must identify the name and address of the taxpayer(s) and the matter(s) from which the representative is withdrawing.

(2) *Substitution or delegation of recognized representative.* Any recognized representative appointed in a power of attorney may substitute or delegate authority under the power of attorney to another recognized representative if substitution or delegation is specifically permitted under the power of attorney. Unless otherwise provided in the power of attorney, a recognized representative may make a substitution or delegation without the consent of any other recognized representative appointed to represent the taxpayer in the same matter. A substitution or delegation is effected by filing the following items with offices of the Internal Revenue Service where the power of attorney has been filed—

(i) *Notice of substitution or delegation.* A Notice of Substitution or Delegation is a statement signed by the recognized representative appointed under the power of attorney. The statement must contain the name and mailing address of the new recognized representative and, if more than one individual is to represent the taxpayer in the matter, a designation of which recognized representative is to receive notices and other written communications;

(ii) *Declaration of representative.* A written declaration which is made by the new representative as required by § 601.502(b); and

(iii) *Power of attorney.* A power of attorney which specifically authorizes the substitution or delegation.

An employee of a recognized representative may not be substituted for his/her employer with respect to the representation of a taxpayer before the Internal Revenue Service unless the employee is a recognized representative in his/her own capacity under the provisions of § 601.502(a). However, even if such employee is not a recognized representative in his/her own capacity under the provisions of § 601.502(a), that individual may be authorized by the taxpayer under a tax information authorization to receive and/or inspect confidential tax information under the provisions of section 6103 of the Internal Revenue Code and the regulations thereunder. [Reg. § 601.505.]

● *Regulations*

[¶ 44,428] § 601.506. **Notices to be given to recognized representative; direct contact with taxpayer; delivery of a check drawn on the United States Treasury to recognized representative.**—(a) *General.* Any notice or other written communication (or a copy thereof) required or permitted to be given to a taxpayer in any matter before the Internal Revenue Service must be given to the taxpayer and, unless restricted by the taxpayer, to the representative according to the following procedures—

(1) If the taxpayer designates more than one recognized representative to receive notices and other written communications, it will be the practice of the Internal Revenue Service to give copies of such to two (but not more than two) individuals so designated.

(2) In a case in which the taxpayer does not designate which recognized representative is to receive notices, it will be the practice of the Internal Revenue Service to give notices and other communications to the first recognized representative appointed on the power of attorney.

(3) Failure to give notice or other written communication to the recognized representative of a taxpayer will not affect the validity of any notice or other written communication delivered to a taxpayer.

Unless otherwise indicated in the document, a power of attorney other than Form 2848 will be presumed to grant the authority to receive notices or other written

**EXHIBIT "A"**

Case 1:03-cv-00039   Document 31   Filed 01/22/2004   Page 8 of 20



communication (or a copy thereof) required or permitted to be given to a taxpayer in any matter(s) before the Internal Revenue Service to which the power of attorney pertains.

(b) *Cases where taxpayer may be contacted directly.* Where a recognized representative has unreasonably delayed or hindered an examination, collection or investigation by failing to furnish, after repeated request, nonprivileged information necessary to the examination, collection or investigation, the Internal Revenue Service employee conducting the examination, collection or investigation may request the permission of his/her immediate supervisor to contact the taxpayer directly for such information.

(1) *Procedure.* If such permission is granted, the case file will be documented with sufficient facts to show how the examination, collection or investigation was being delayed or hindered. Written notice of such permission, briefly stating the reason why it was granted, will be given to both the recognized representative and the taxpayer together with a request of the taxpayer to supply such nonprivileged information. (See 7521(c) of the Internal Revenue Code and the regulations thereunder.)

(2) *Effect of direct notification.* Permission to by-pass a recognized representative and contact a taxpayer directly does not automatically disqualify an individual to act as the recognized representative of a taxpayer in a matter. However, such information may be referred to the Director of Practice for possible disciplinary proceedings under Circular No. 230, 31 CFR Part 10.

(c) *Delivery of a check drawn on the United States Treasury*—(1) *General.* A check drawn on the United States Treasury (e.g., a check in payment of refund of internal revenue taxes, penalties, or interest, see § 601.504(a)(5)) will be mailed to the recognized representative of a taxpayer provided that a power of attorney is filed containing specific authorization for this to be done.

(2) *Address of recognized representative.* The check will be mailed to the address of the recognized representative listed on the power of attorney unless such recognized representative notifies the Internal Revenue Service in writing that his/her mailing address has been changed.

(3) *Authorization of more than one recognized representative.* In the event a power of attorney authorizes more than one recognized representative to receive a check on the taxpayer's behalf, and such representatives have different addresses, the Internal Revenue Service will mail the check directly to the taxpayer, unless a statement (signed by all of the recognized representatives so authorized) is submitted which indicates the address to which the check is to be mailed.

(4) *Cases in litigation.* The provisions of § 601.506(c) concerning the issuance of a tax refund do not apply to the issuance of a check in payment of claims which have been either reduced to judgment or settled in the course (or as a result) of litigation.

(d) *Centralized Authorization File (CAF) system*—(1) *Information recorded onto the CAF system.* Information from both powers of attorney and tax information authorizations is recorded onto the CAF system. Such information enables Internal Revenue Service personnel who do not have access to the actual power of attorney or tax information authorizations to—

(i) determine whether a recognized representative or an appointee is authorized by a taxpayer to receive and/or inspect confidential tax information;

(ii) determine, in the case of a recognized representative, whether that representative is authorized to perform the acts set forth in § 601.504(a); and

(iii) send copies of computer generated notices and communications to an appointee or recognized representative so authorized by the taxpayer.

¶ **44,428** Reg. § 601.506(b)(1) © 1991, Commerce Clearing House, Inc.

tax lien shall be made within 1 year after the taxpayer becomes aware of the erroneously filed tax lien.

(e) *Proof of full payment.* As used in paragraph (d)(2)(iii) of this section, the term "proof of full payment" means:

(1) An internal revenue cashier's receipt reflecting full payment of the tax liability in question prior to the date the federal tax lien issue was filed;

(2) A canceled check to the Internal Revenue Service in an amount which was sufficient to satisfy the tax liability for which release is being sought; or

(3) Any other manner of proof acceptable to the district director.

(f) *Exclusive remedy.* The appeal established by section 6326 of the Internal Revenue Code and by this section shall be the exclusive administrative remedy with respect to the erroneous filing of a notice of federal tax lien.

(g) *Effective date.* The provisions of this section are effective July 7, 1989.

[T.D. 8250, 54 FR 19569, May 8, 1989. Redesignated at 56 FR 19948, May 1, 1991]

SEIZURE OF PROPERTY FOR COLLECTION OF TAXES

§301.6330–1T **Notice and opportunity for hearing prior to levy (temporary).**

(a) *Notification*—(1) *In general.* Except as specified in paragraph (a)(2) of this section, the district directors, directors of service centers, and the Assistant Commissioner (International), or their successors, are required to provide persons upon whose property or rights to property the IRS intends to levy on or after January 19, 1999, notice of that intention and to give them the right to, and the opportunity for, a pre-levy Collection Due Process hearing (CDP hearing) with the Internal Revenue Service Office of Appeals (Appeals). This Collection Due Process Hearing Notice (CDP Notice) must be given in person, left at the dwelling or usual place of business of such person, or sent by certified or registered mail, return receipt requested, to such person's last known address. For further guidance regarding the definition of last known address, see §301.6212–2.

(2) *Exceptions*—(1) *State tax refunds.* Section 6330 does not require the IRS to provide the taxpayer a notification of the taxpayer's right to a CDP hearing prior to issuing a levy to collect State tax refunds owing to the taxpayer. However, the district director, the service center director, and the Assistant Commissioner (International), or their successors, are required to give notice of the right to, and the opportunity for, a CDP hearing with Appeals with respect to the tax liability for the tax period for which the levy on the State tax refund was made on or after January 19, 1999, within a reasonable time after the levy has occurred. The notification required to be given following a levy on a State tax refund is referred to as a post-levy CDP Notice.

(ii) *Jeopardy.* Section 6330 does not require the IRS to provide the taxpayer a notification of the taxpayer's right to a CDP hearing prior to levy when there has been a determination that collection of the tax is in jeopardy. However, the district director, the service center director, and the Assistant Commissioner (International), or their successors, are required to provide notice of the right to, and the opportunity for, a CDP hearing with Appeals to the taxpayer with respect to any such levy issued on or after January 19, 1999, within a reasonable time after the levy has occurred. The notification required to be given following a jeopardy levy is also referred to as post-levy CDP Notice.

(3) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (a) as follows:

Q-A1. Who is the "person" to be notified under section 6330? A-A1. Under section 6330(a)(1), a pre-levy or post-levy CDP Notice is only required to be given to the person whose property or right to property is intended to be levied upon, or, in the case of a levy made on a State tax refund or in the case of a jeopardy levy, the person whose property or right to property was levied upon. The person described in section 6330(a)(1) is the same person described in section 6331(a). Pursuant to section 6331(a), notice is to be given to the person liable to pay the tax due after notice and demand who refuses or neglects to pay (hereinafter referred to as the taxpayer).

Q-A2. Will the IRS notify a known nominee of, a person holding property

EXHIBIT "B"

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 10 of 20

of, or a person who holds property subject to a lien with respect to the taxpayer of its intention to issue a levy?

A-A2. No. Such a person is not the person described in section 6331(a), but such persons have other remedies. See A-B5 of this paragraph (a)(3).

Q-A3. Will the IRS give notification for each tax and tax period it intends to include or has included in a levy issued on or after January 19, 1999?

A-A3. Yes. The notification of intent to levy or of the issuance of a jeopardy or State tax refund levy will specify each tax and tax period that will be or was included in the levy.

Q-A4. Will the IRS give notification to a taxpayer with respect to levies for a tax and tax period issued on or after January 19, 1999, even though the IRS had issued a levy prior to January 19, 1999, with respect to the same tax and tax period?

A-A4. Yes. The IRS will provide appropriate pre-levy or post-levy notification to a taxpayer regarding the first levy it intends to issue or has issued on or after January 19, 1999, with respect to a tax and tax period, even though it had issued a levy with respect to that same tax and tax period prior to January 19, 1999.

Q-A5. When will the IRS provide this notice?

A-A5. Pursuant to section 6330(a)(1), beginning January 19, 1999, the IRS will give a pre-levy CDP Notice to the taxpayer of its intent to levy on property or rights to property, other than State tax refunds and in jeopardy levy situations, at least 30 days prior to the first such levy with respect to a tax and tax period. If the taxpayer has not received a pre-levy CDP Notice and the IRS levies on a State tax refund or issues a jeopardy levy on or after January 19, 1999, the IRS will provide a post-levy CDP Notice to the taxpayer within a reasonable time after that levy.

Q-A6. What must the pre-levy CDP Notice include?

A-A6. Pursuant to section 6330(a)(3), the notification must include, in simple and nontechnical terms:

(i) The amount of the unpaid tax.
(ii) Notification of the right to a hearing.
(iii) A statement that the IRS intends to levy.

(iv) The taxpayers's rights with respect to the levy action, including a brief statement that sets forth—

(A) The statutory provisions relating to the levy and sale of property;

(B) The procedure applicable to the levy and sale of property;

(C) The administrative appeals available to the taxpayer with respect to levy and sale and the procedures relating to those appeals;

(D) The alternatives available to taxpayers that could prevent levy on the property (including installment agreements);

(E) The statutory provisions relating to redemption of property and the release of liens on property; and

(F) The procedures applicable to the redemption of property and the release of liens on property.

Q-A7. What must the post-levy CDP Notice include?

A-A7. Pursuant to section 6330(a)(3), the notification must include, in simple and nontechnical terms:

(i) The amount of the unpaid tax.
(ii) Notification of the right to a hearing.
(iii) A statement that the IRS has levied upon the taxpayer's State tax refund or has made a jeopardy levy on property or rights to property of the taxpayer, as appropriate.

(iv) The taxpayer's rights with respect to the levy action, including a brief statement that sets forth—

(A) The statutory provisions relating to the levy and sale of property;

(B) The procedures applicable to the levy and sale of property;

(C) The administrative appeals available to the taxpayer with respect to levy and sale and the procedures relating to those appeals;

(D) The alternatives available to taxpayers that could prevent any further levies on the taxpayer's property (including installment agreements);

(E) The statutory provisions relating to redemption of property and the release of liens on property; and

(F) The procedures applicable to the redemption of property and the release of liens on property.

Q-A8. How will this pre-levy or post-levy notification be accomplished?

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 11 of 20

A–A8. (i) The IRS will notify the taxpayer by means of a pre-levy CDP Notice or a post-levy CDP Notice, as appropriate. The additional information IRS is required to provide, together with Form 12153, Request for a Collection Due Process Hearing, will be included with that Notice. The IRS may effect delivery of a pre-levy CDP Notice (and accompanying materials) in one of three ways:

(A) By delivering the notice personally to the taxpayer.

(B) By leaving the notice at the taxpayer's dwelling or usual place of business.

(C) By mailing the notice to the taxpayer at the taxpayer's last known address by certified or registered mail, return receipt requested.

(ii) The IRS may effect delivery of a post-levy CDP Notice (and accompanying materials) in one of three ways:

(A) By delivering the notice personally to the taxpayer.

(B) By leaving the notice at the taxpayer's dwelling or usual place of business.

(C) By mailing the notice to the taxpayer at the taxpayer's last known address by certified or registered mail.

Q–A9. What are the consequences if the taxpayer does not receive or accept the notification which was properly left at the taxpayer's dwelling or usual place of business, or properly sent by certified or registered mail, return receipt requested, to the taxpayer's last known address?

A–A9. Notification properly sent to the taxpayer's last known address or left at the taxpayer's dwelling or usual place of business is sufficient to start the 30-day period within which the taxpayer may request a CDP hearing. Actual receipt is not a prerequisite to the validity of the notice.

Q–A10. What if the taxpayer does not receive the CDP Notice because the IRS did not send that notice by certified or registered mail to the taxpayer's last known address, or failed to leave it at the dwelling or usual place of business of the taxpayer, and the taxpayer fails to request a CDP hearing with Appeals within the 30-day period commencing the day after the date of the CDP Notice?

A–A10. When the IRS determines that it failed properly to provide a taxpayer with a CDP Notice, it will promptly provide the taxpayer with a substitute CDP Notice and provide the taxpayer with an opportunity to request a CDP hearing.

(4) *Examples.* The following examples illustrate the principles of this paragraph (a):

*Example 1.* Prior to January 19, 1999, the IRS issues a continuous levy on a taxpayer's wages and a levy on that taxpayer's fixed right to future payments. The IRS is not required to release either levy on or after January 19, 1999, until the requirements of section 6343(a)(1) are met. The taxpayer is not entitled to a CDP Notice or a CDP hearing under section 6330 with respect to either levy because both levy actions were initiated prior to January 19, 1999.

*Example 2.* The same facts as in *Example 1*, except the IRS intends to levy upon a taxpayer's bank account on or after January 19, 1999. The taxpayer is entitled to a pre-levy CDP Notice with respect to this proposed new levy.

(b) *Entitlement to a CDP hearing*—(1) *In general.* A taxpayer is entitled to one CDP hearing with respect to the tax and tax period covered by the pre-levy or post-levy CDP Notice provided the taxpayer. The taxpayer must request such a hearing within the 30-day period commencing on the day after the date of the CDP Notice.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (b) as follows:

Q–B1. Is the taxpayer entitled to a CDP hearing where a levy for State tax refunds is served on or after January 19, 1999, even though the IRS had previously served other levies prior to January 19, 1999, seeking to collect the taxes owed for the same period?

A–B1. Yes. The taxpayer is entitled to a CDP hearing under section 6330 for the tax and tax period set forth in such a levy issued on or after January 19, 1999.

Q–B2. Is the taxpayer entitled to a CDP hearing when the IRS, more than 30 days after issuance of a CDP Notice with respect to a tax period, provides subsequent notice to that taxpayer that it intends to levy on property or rights to property of the taxpayer for the same tax and tax period shown on the CDP Notice?

259

A–B2. No. Under section 6330, only the first pre-levy or post-levy Notice with respect to liabilities for a tax and tax period constitutes a CDP Notice. If the taxpayer does not timely request a CDP hearing with Appeals following that first notification, the taxpayer foregoes the right to a CDP hearing with Appeals and judicial review of Appeals's determination with respect to collection activity relating to that tax and tax period. The IRS generally provides additional notices or reminders (reminder notifications) to the taxpayer of its intent to levy when no collection action has occurred within 180 days of a proposed levy. Under such circumstances a taxpayer, however, may request an equivalent hearing as described in paragraph (i) of this section.

Q–B3. When the IRS provides a taxpayer with a substitute CDP Notice and the taxpayer timely requests a CDP hearing, is the taxpayer entitled to a CDP Hearing before Appeals?

A–B3. Yes. Unless the taxpayer provides the IRS a written withdrawal of the request that Appeals conduct a CDP hearing, the taxpayer is entitled to a CDP hearing before Appeals. Following the hearing, Appeals will issue a Notice of Determination, and the taxpayer is entitled to seek judicial review of that Notice of Determination.

Q–B4. If the IRS sends a second CDP Notice under section 6330 (other than a substitute CDP Notice) for a tax period and with respect to an amount of unpaid tax for which a section 6330 CDP Notice was previously sent, is the taxpayer entitled to a second section 6330 CDP hearing?

A–B4. No. The taxpayer is entitled to only one CDP hearing under section 6330 with respect to the tax and tax period. The taxpayer must request the CDP hearing within 30 days of the date of the first CDP Notice provided for that tax and tax period.

Q–B5. Will the IRS give pre-levy or post-levy CDP Notices to known nominees of, persons holding property of, or persons holding property subject to a lien with respect to the taxpayer?

A–B5. No. Such person is not the person described in section 6331(a) and is, therefore, not entitled to a CDP hearing or an equivalent hearing (as discussed in paragraph (i) of this section). Such person, however, may seek reconsideration by the IRS office collecting the tax, assistance from the National Taxpayer Advocate, or an administrative hearing before Appeals under its Collection Appeals Program. However, any such administrative hearing would not be a CDP hearing under section 6330 and any determination or decision resulting from the hearing would not be subject to judicial review.

(c) *Requesting a CDP hearing*—(1) *In general.* Where a taxpayer is entitled to a CDP hearing under section 6330, such a hearing must be requested during the 30-day period that commences that day after the date of the CDP Notice.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (c) as follows:

Q–C1. What must a taxpayer do to obtain a CDP hearing?

A–C1. (i) The taxpayer must make a request in writing for a CDP hearing. A written request in any form which requests a CDP hearing will be acceptable. The request must include the taxpayer's name, address, and daytime telephone number, and must be signed by the taxpayer or the taxpayer's authorized representative and dated. Included with the CDP Notice will be a Form 12153, Request for a Collection Due Process Hearing, that can be used by the taxpayer in requesting a CDP hearing. The Form 12153 requests the following information:

(A) The taxpayer's name, address, daytime telephone number, and taxpayer identification number (SSN or TIN).

(B) The type of tax involved.

(C) The tax period at issue.

(D) A statement that the taxpayer requests a hearing with Appeals concerning the proposed collection activity.

(E) The reason or reasons why the taxpayer disagrees with the proposed collection action.

(ii) Taxpayers are encouraged to use a Form 12153 in requesting a CDP hearing so that such a request can be readily identified and forwarded to Appeals. Taxpayers may obtain a copy of Form 12153 by contacting the IRS office that issued the CDP Notice or by calling, toll free, 1–800–829–3676.

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 13 of 20

Q-C2. Must the request for the CDP hearing be in writing?

A-C2. Yes. There are several reasons why the request for a CDP hearing must be in writing. First, the filing of a timely request for a CDP hearing is the first step in what may result in a court proceeding. A written request will provide proof that the CDP hearing was requested and thus permit the court to verify that it has jurisdiction over any subsequent appeal of the Notice of Determination issued by Appeals. In addition, the receipt of the written request will establish the date on which the periods of limitation under section 6502 (relating to collection after assessment), section 6531 (relating to criminal prosecutions), and section 6532 (relating to suits) are suspended as a result of the CDP hearing and any judicial appeal. Moreover, because the IRS anticipates that taxpayers will contact the IRS office that issued the CDP Notice for further information, for help in filling out Form 12153, or in an attempt to resolve their liabilities prior to going through the CDP hearing process, the requirement of a written request should help to prevent any misunderstanding as to whether a CDP hearing has been requested. If the information requested on Form 12153 is furnished by the taxpayer, the written request will also help to establish the issues for which the taxpayer seeks a determination by Appeals.

Q-C3. When must a taxpayer request a CDP hearing with respect to a CDP Notice issued under section 6330?

A-C3. A taxpayer must submit a written request for a CDP hearing with respect to a CDP Notice issued under section 6330 within the 30-day period commencing the day after the date of the CDP Notice. This period is slightly different from the period allowed taxpayers to submit a written request for a CDP hearing with respect to a CDP Notice issued under section 6320. For a CDP Notice issued under section 6320, a taxpayer must submit a written request for a CDP hearing within the 30-day period commencing the day after the end of the five business day period following the filing of the notice of federal tax lien (NFTL).

Q-C4. How will the timeliness of a taxpayer's written request for a CDP hearing be determined?

A-C4. The rules under section 7502 and the regulations thereunder and section 7503 and the regulations thereunder will apply to determine the timeliness of the taxpayer's request for a CDP hearing, if properly transmitted and addressed as provided in A-C6 of this paragraph (c)(2).

Q-C5. Is the 30-day period within which a taxpayer must make a request for a CDP hearing extended because the taxpayer resides outside the United States?

A-C5. No. Section 6330 does not make provision for such a circumstance. Accordingly, all taxpayers who want a CDP hearing under section 6330 must request such a hearing within the 30-day period commencing the day after the date of the CDP Notice.

Q-C6. Where should the written request for a CDP hearing be sent?

A-C6. The written request for a CDP hearing should be filed with the IRS office that issued the CDP Notice at the address indicated on the CDP Notice. If the address of that office is not known, the request may be sent to the District Director serving the district of the taxpayer's residence or principal place of business. If the taxpayer does not have a residence or principal place of business in the United States, the request may be sent to the Director, Philadelphia Service Center.

Q-C7. What will happen if the taxpayer does not request a section 6330 CDP hearing in writing within the 30-day period commencing on the day after the date of the CDP Notice?

A-C7. If the taxpayer does not request a CDP hearing with Appeals within the 30-day period commencing the day after the date of the CDP Notice, the taxpayer will forego the right to a CDP hearing under section 6330 with respect to the tax and tax period or periods shown on the CDP Notice. In addition, the IRS will be free to pursue collection action at the conclusion of the 30-day period following the date of the CDP Notice. The taxpayer may, however, request an equivalent hearing. See paragraph (i) of this section.

Q–C8. When must a taxpayer request a CDP hearing with respect to a substitute CDP Notice?

A–C8. A CDP hearing with respect to a substitute CDP Notice must be requested in writing by the taxpayer prior to the end of the 30-day period commencing the day after the date of the substitute CDP Notice.

Q–C9. Can taxpayers attempt to resolve the matter of the proposed levy with an officer or employee of the IRS office collecting the tax liability stated on the CDP Notice either before or after requesting a CDP hearing?

A–C9. Yes. Taxpayers are encouraged to discuss their concerns with the IRS office collecting the tax, either before or after they request a CDP hearing. If such a discussion occurs before a request is made for a CDP hearing, the matter may be resolved without the need for Appeals consideration. However, these discussions do not suspend the running of the 30-day period within which the taxpayer is required to request a CDP hearing, nor do they extend that 30-day period. If discussions occur after the request for a CDP hearing is filed and the taxpayer resolves the matter with the IRS office collecting the tax, the taxpayer may withdraw in writing the request that a CDP hearing be conducted by Appeals. The taxpayer can also waive in writing some or all of the requirements regarding the contents of the Notice of Determination.

(d) *Conduct of CDP hearing*—(1) *In general.* If a taxpayer requests a CDP hearing under section 6330(a)(3)(B) (and does not withdraw that request), the CDP hearing will be held with Appeals. The taxpayer is entitled to only one CDP hearing under section 6330 with respect to the tax and tax period or periods shown on the CDP Notice. To the extent practicable, the CDP hearing requested under section 6330 will be held in conjunction with any CDP hearing the taxpayer requests under section 6320. A CDP hearing will be conducted by an employee or officer of Appeals who has had no involvement with respect to the tax for the tax period or periods covered by the hearing prior to the first CDP hearing under section 6320 or section 6330, unless the taxpayer waives that requirement.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (d) as follows:

Q–D1. Under what circumstances can a taxpayer receive more than one CDP hearing with respect to a tax period?

A–D1. The taxpayer may receive more than one CDP hearing with respect to a tax period where the tax involved is a different type of tax (for example, an employment tax liability, where the original CDP hearing for the tax period involved an income tax liability), or where the same type of tax for the same period is involved, but where the amount of the tax has changed as a result of an additional assessment of tax for that period or an additional accuracy-related or filing delinquency penalty has been assessed. The taxpayer is not entitled to another CDP hearing if the additional assessment represents accruals of interest or accruals of penalties.

Q–D2. Will a CDP hearing with respect to one tax period be combined with a CDP hearing with respect to another tax period?

A–D2. To the extent practicable, a hearing with respect to one tax period shown on a CDP Notice will be combined with any and all other hearings to which the taxpayer may be entitled with respect to other tax periods shown on the CDP Notice.

Q–D3. Will a CDP hearing under section 6330 be combined with a CDP hearing under section 6320?

A–D3. To the extent it is practicable, a CDP hearing under section 6330 will be held in conjunction with a CDP hearing under section 6320.

Q–D4. What is considered to be prior involvement by an employee or officer of Appeals with respect to the tax and tax period or periods involved in the hearing?

A–D4. Prior involvement by an employee or officer of Appeals includes participation or involvement in an Appeals hearing (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax period shown on the CDP Notice.

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 15 of 20

Q–D5. How can a taxpayer waive the requirement that the officer or employee of Appeals had no prior involvement with respect to the tax and tax period or periods?

A–D5. The taxpayer must sign a written waiver.

(e) *Matters considered at CDP hearing*—(1) *In general.* Appeals has the authority to determine the validity, sufficiency, and timeliness of any CDP Notice given by the IRS and of any request for a CDP hearing that is made by a taxpayer. Prior to issuance of a determination, the hearing officer is required to obtain verification from the IRS office collecting the tax that the requirements of any applicable law or administrative procedure have been met. The taxpayer may raise any relevant issue relating to the unpaid tax at the hearing, including appropriate spousal defenses, challenges to the appropriateness of the proposed collection action, and offers of collection alternatives. The taxpayer also may raise challenges to the existence or amount of the tax liability for any tax period shown on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute that tax liability. Finally, the taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6320 or in any other previous administrative or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding. Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.

(2) *Spousal defenses.* A taxpayer may raise any appropriate spousal defenses at a CDP hearing. To claim a spousal defense under section 6015, the taxpayer must do so in writing according to rules prescribed by the Secretary. Spousal defenses raised under section 6015 in a CDP hearing are governed in all respects by the provisions of section 6015 and the procedures prescribed by the Secretary thereunder.

(3) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (e) as follows:

Q–E1. What factors will Appeals consider in making its determination?

A–E1. Appeals will consider the following matters in making its determination:

(i) Whether the IRS met the requirements of any applicable law or administrative procedure.

(ii) Any issues appropriately raised by the taxpayer relating to the unpaid tax.

(iii) Any appropriate spousal defenses raised by the taxpayer.

(iv) Any challenges made by the taxpayer to the appropriateness of the proposed collection action.

(v) Any offers by the taxpayer for collection alternatives.

(vi) Whether the proposed collection action balances the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.

Q–E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?

A–E2. A taxpayer is entitled to challenge the existence or amount of the tax liability specified in the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency asserted in the notice of deficiency. An opportunity to dispute a liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability.

Q–E3. Are spousal defenses subject to the limitations imposed under section 6330(c)(2)(B) on a taxpayer's right to challenge the tax liability specified in the CDP Notice at a CDP hearing?

A–E3. No. The limitations imposed under section 6330(c)(2)(B) do not apply to spousal defenses. A spousal defense raised under section 6015 is governed by that section; therefore any limitations under section 6015 will apply.

Q–E4. May a taxpayer raise at a CDP hearing a spousal defense under section

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 16 of 20

6015 if that defense was raised and considered in a prior judicial proceeding that has become final?

A-E4. No. A taxpayer is precluded by limitations under section 6015 from raising a spousal defense under section 6015 in a CDP hearing under these circumstances.

Q-E5. What collection alternatives are available to the taxpayer?

A-E5. Collection alternatives would include, for example, a proposal to withhold the proposed or future collection action in circumstances that will facilitate the collection of the tax liability, an installment agreement, an offer-in-compromise, the posting of a bond, or the substitution of other assets.

Q-E6. What issues may a taxpayer raise in a CDP hearing under section 6330 if he previously received a notice under section 6320 with respect to the same tax and tax period and did not request a CDP hearing with respect to that notice?

A-E6. The taxpayer may raise appropriate spousal defenses, challenges to the appropriateness of the proposed collection action, and offers of collection alternatives. The existence or amount of the tax liability for the tax for the tax period shown in the CDP Notice may be challenged only if the taxpayer did not already have an opportunity to dispute that tax liability. Where the taxpayer previously received a CDP Notice under section 6320 with respect to the same tax and tax period and did not request a CDP hearing with respect to that earlier CDP Notice, the taxpayer already had an opportunity to dispute the existence or amount of the underlying tax liability.

Q-E7. How will Appeals issue its determination?

A-E7. (i) Taxpayers will be sent a dated Notice of Determination by certified or registered mail. The Notice of Determination will set forth Appeals's findings and decisions:

(A) It will state whether the IRS met the requirements of any applicable law or administrative procedure.

(B) It will resolve any issues appropriately raised by the taxpayer relating to the unpaid tax.

(C) It will include a decision on any appropriate spousal defenses raised by the taxpayer.

(D) It will include a decision on any challenges made by the taxpayer to the appropriateness of the collection action.

(E) It will respond to any offers by the taxpayer for collection alternatives.

(F) It will address whether the proposed collection action represents a balance between the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.

(ii) The Notice of Determination will also set forth any agreements that Appeals reached with the taxpayer, any relief given the taxpayer, and any actions the taxpayer and/or the IRS are required to take. Lastly, the Notice of Determination will advise the taxpayer of his right to seek judicial review within 30 days of the date of the Notice of Determination.

(iii) Because taxpayers are encouraged to discuss their concerns with the IRS office collecting the tax or filing the NFTL, certain matters that might have been raised at a CDP hearing may be resolved without the need for Appeals consideration. Unless as a result of these discussions, the taxpayer agrees in writing to withdraw the request that Appeals conduct a CDP hearing, Appeals will still issue a Notice of Determination, but the taxpayer can waive in writing Appeals's consideration of some or all of the matters it would otherwise consider in making its determination.

Q-E8. Is there a time limit on the CDP hearings or on when Appeals must issue a Notice of Determination?

A-E8. No. Appeals will, however, attempt to conduct CDP hearings as expeditiously as possible.

Q-E9. Why is the Notice of Determination and its date important?

A-E9. The Notice of Determination will set forth Appeals's findings and decisions with respect to the matters set forth in A-E1 of this paragraph (e)(3). The date of the Notice of Determination establishes the beginning date of

Case 1:03-cv-00039 Document 31 Filed 01/22/2004 Page 17 of 20

disagrees with the Notice of Determination?

A-F5. In seeking Tax Court or district court review of Appeals's Notice of Determination, the taxpayer can only ask the court to consider an issue that was raised in the taxpayer's CDP hearing.

(g) *Effect of request for CDP hearing and judicial review on periods of limitation*—(1) *In general.* The periods of limitation under section 6502 (relating to collection after assessment), section 6531 (relating to criminal prosecutions), and section 6532 (relating to suits) are suspended until the date the IRS receives the taxpayer's written withdrawal of the request for a CDP hearing by Appeals or the determination resulting from the CDP hearing becomes final by expiration of the time for seeking review or reconsideration. In no event shall any of these periods of limitation expire before the 90th day after the date on which the determination with respect to such hearing becomes final upon expiration of the time for seeking review or reconsideration.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (g) as follows:

Q-G1. For what period of time will the periods of limitation under section 6502, section 6531, and section 6532 remain suspended if the taxpayer timely requests a CDP hearing concerning a pre-levy or post-levy CDP Notice?

A-G1. The suspension period commences on the date the IRS receives the taxpayer's written request for a CDP hearing. The suspension period continues until the IRS receives a written withdrawal by the taxpayer of the request for a CDP hearing or the determination resulting from the CDP hearing becomes final by expiration of the time for seeking its review or reconsideration. In no event shall any of these periods of limitation expire before the 90th day after the day on which there is a final determination with respect to such hearing. The periods of limitation that are suspended under section 6330 are those which apply to the taxes and the tax period or periods to which the CDP Notice relates.

Q-G2. For what period of time will the periods of limitation under section 6502, section 6531, and section 6532 be suspended if the taxpayer does not request a CDP hearing concerning the CDP Notice, or the taxpayer requests a CDP hearing, but his request is not timely?

A-G2. Under either of these circumstances, section 6330 does not provide for a suspension of the periods of limitation.

(3) *Examples.* The following examples illustrate the principles of this paragraph (g).

*Example 1.* The period of limitation under section 6502 with respect to the taxpayer's tax period listed in the CDP Notice will expire on August 1, 1999. The IRS sent a CDP Notice to the taxpayer on April 30, 1999. The taxpayer timely requested a CDP hearing. The IRS received this request on May 15, 1999. Appeals sends the taxpayer its determination on June 15, 1999. The taxpayer timely seeks judicial review of that determination. The period of limitation under section 6502 would be suspended from May 15, 1999, until the determination resulting from that hearing becomes final by expiration of the time for seeking review or reconsideration before the appropriate court, plus 90 days.

*Example 2.* Same facts as in *Example 1*, except the taxpayer does not seek judicial review of Appeals's determination. Because the taxpayer requested the CDP hearing when fewer than 90 days remained on the period of limitation, the period of limitation will be extended to October 13, 1999 (90 days from July 15, 1999).

(h) *Retained jurisdiction of Appeals*—(1) *In general.* The Appeals office that makes a determination under section 6330 retains jurisdiction over that determination, including any subsequent administrative hearings that may be requested by the taxpayer regarding levies and any collection actions taken or proposed with respect to Appeals's determination. Once a taxpayer has exhausted his other remedies, Appeals's retained jurisdiction permits it to consider whether a change in the taxpayer's circumstances affects its original determination. Where a taxpayer alleges a change in circumstances that affects Appeals's original determination, Appeals may consider whether changed circumstances warrant a change in its earlier determination.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (h) as follows:

Case 1:03-cv-00039   Document 31   Filed 01/22/2004   Page 19 of 20

Q-H1. Are the periods of limitation suspended during the course of any subsequent Appeals consideration of the matters raised by a taxpayer when the taxpayer invokes the retained jurisdiction of Appeals under section 6330(d)(2)(A) or (d)(2)(B)?

A-H1. No. Under section 6330(b)(2), a taxpayer is entitled to only one section 6330 CDP hearing with respect to the tax and tax period or periods to which the unpaid tax relates. Any subsequent consideration by Appeals pursuant to its retained jurisdiction is not a continuation of the original CDP hearing and does not suspend the periods of limitation.

Q-H2. Is a decision of Appeals resulting from a subsequent hearing appealable to the Tax Court or a district court?

A-H2. No. As discussed in A-H1, a taxpayer is entitled to only one section 6330 CDP hearing with respect to the tax and tax period or periods specified in the CDP Notice. Only determinations resulting from CDP hearings are appealable to the Tax Court or a district court.

(i) *Equivalent hearing*—(1) *In general.* A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP hearing. Such a taxpayer may nevertheless request an administrative hearing with Appeals, which is referred to herein as an "equivalent hearing." The equivalent hearing will be held by Appeals and will generally follow Appeals procedures for a CDP hearing. Appeals will not, however, issue a Notice of Determination. Under such circumstances, Appeals will issue a Decision Letter.

(2) *Questions and answers.* The questions and answers illustrate the provisions of this paragraph (i) as follows:

Q-I1. What issues will Appeals consider at an equivalent hearing?

A-I1. In an equivalent hearing, Appeals will consider the same issues that it would have considered at a CDP hearing on the same matter.

Q-I2. Are the periods of limitation under sections 6502, 6531, and 6532 suspended if the taxpayer does not timely request a CDP hearing and is subsequently given an equivalent hearing?

A-I2. No. The suspension period provided for in section 6330(e) relates only to hearings requested within the 30-day period that commences the day following the date of the pre-levy or post-levy CDP Notice, that is, CDP hearings.

Q-I3. Will collection action be suspended if a taxpayer requests and receives an equivalent hearing?

A-I3. Collection action is not required to be suspended. Accordingly, the decision to take collection action during the pendency of an equivalent hearing will be determined on a case-by-case basis. Appeals may request the IRS office with responsibility for collecting the taxes to suspend all or some collection action or to take other appropriate action if it determines that such action is appropriate or necessary under the circumstances.

Q-I4. What will the Decision Letter state?

A-I4. The Decision Letter will generally contain the same information as a Notice of Determination.

Q-I5. Will a taxpayer be able to obtain court review of a decision made by Appeals with respect to an equivalent hearing?

A-I5. Section 6330 does not authorize a taxpayer to appeal the decision of Appeals with respect to an equivalent hearing. A taxpayer may under certain circumstances be able to seek Tax Court review of Appeals's denial of relief under section 6015(b) or (c). Such review must be sought within 90 days of the issuance of Appeals' determination on those issues, as provided by section 6015(e).

(j) *Effective date.* This section is applicable with respect to any levy which occurs on or after January 19, 1999, and before January 21, 2002.

[T.D. 8809, 64 FR 3407, Jan. 22, 1999, as amended by T.D. 8939, 66 FR 2821, Jan. 12, 2001]

§ 301.6331-1 Levy and distraint.

(a) *Authority to levy*—(1) *In general.* If any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand, the district director to whom the assessment is charged (or, upon his request, any other district director) may proceed to collect the tax by levy. The district director may levy upon any property, or rights to property, whether real or personal, tangible or intangible,

Case 1:03-cv-00039    Document 31    Filed 01/22/2004    Page 20 of 20